IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MELISSA A. CARLISLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-911-TFM |
| | ) | (WO) |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

## I.  Introduction

Plaintiff Melissa A. Carlisle ("Carlisle") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., and for supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that she is unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See  Chester v. Bowen*, 792

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented

to entry of final judgment by the United States Magistrate Judge.  The case is now before the

court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).   Based on the court's

review of the record in this case and the parties' briefs, the court AFFIRMS the

Commissioner.


## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?
(3)     Does the person's impairment meet or equal one of the specific
        impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the
        economy?

An affirmative answer to any of the above questions leads either to the next

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

2

question, or, on steps three and five, to a finding of disability.  A negative
answer to any question, other than step three, leads to a determination of "not
disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court

must find the Commissioner's decision conclusive if it is supported by substantial evidence.

42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial

evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence

as a reasonable person would accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of

the record which supports the decision of the ALJ but instead must view the record in its

entirety and take account of evidence which detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the
reasonableness of the [Commissioner's] . . . factual findings . . . No similar
presumption of validity attaches to the [Commissioner's] . . . legal
conclusions, including determination of the proper standards to be applied in
evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Carlisle was 44 years old at the time of the hearing and has

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).
The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately
cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

completed the ninth grade. (R. 28, 32, 147.)  She has no relevant work history.  (R. 53.)
Carlisle alleges that she became disabled on February 1, 2008, from seizures, chronic
obstructive pulmonary disease, asthma, irritable bowel syndrome, acid reflux, a hiatal hernia,
anxiety attacks, allergies, vertigo, headaches, bladder spasms, back pain, and sleep apnea.
(R. 33-52.)  After the hearing, the ALJ found that Carlisle suffers from severe impairments
of questionable seizure disorder, asthma, chronic obstructive pulmonary disease, hiatal
hernia, bladder infections, back pain, vertigo, gastritis, and anxiety.  (R. 15.)  The ALJ
concluded that Carlisle has performed no past relevant work, but that she retains the residual
functional capacity to perform light work with limitations.  (R. 17.)  Testimony from a
vocational expert led the ALJ to conclude that a significant number of jobs exist in the
national economy that Carlisle could perform, including work as a counter clerk, cashier, and
mail clerk.  (R. 22.)  Accordingly, the ALJ concluded that Carlisle is not disabled.  (*Id*.)


**B. The Plaintiff's Claim.**  As stated in the Complaint, Carlisle presents the following
issue for review:

> Whether the ALJ committed reversible error by according more weight to the
> opinion of a non-examining medical expert who merely filled out a form than
> to that of Plaintiff's long term treating physician, Dr. Joe Howell.

(Doc. No. 12, p. 1.)

### IV. Discussion

Carlisle argues that the ALJ erred in assigning greater weight to the opinion of Dr.
James Anderson, a non-examining medical expert, than to the opinion of Dr. Joe Howell, her

4

long-term treating physician.

In October 2008, Dr. Howell completed a medical source statement questionnaire, in which he listed asthma/COPD, seizures, irritable bowel syndrome, acid reflux, anxiety, chronic pelvic and back pain, and chronic bladder problems as Carlisle's impairments.  (R. 409.)  Dr. Howell assessed that Carlisle's pain is caused by urinary bladder problems and a neck condition.  (*Id*.)  He also found that pain is present to such an extent as to be distracting to adequate performance of daily activities or work and that physical activity would increase pain to such a degree as to cause abandonment of tasks and bed rest.  (R. 410.)  He found that during an eight-hour workday, Carlisle would need at least four hours of rest and that she would be absent from work more than three times a month.  (R. 411.)  In addition, Dr. Howell noted that Carlisle suffers from chronic anxiety which markedly impairs her ability to respond to customary work pressures, perform activities within a schedule, maintain attention, concentration, and/or pace for periods of at least two hours and extremely impairs her ability to complete a normal workday and workweek without interruption form psychologically-based symptoms.  (R. 412.)

The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).  The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any

6

reasons for discounting the opinion.  *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ discounted the opinion of Dr. Howell because his treatment records did not support his assessment concerning Carlisle's functional capacity to perform work and debilitating pain.  The ALJ specifically found:

> I have assigned little weight to the functional capacities evaluation and pain evaluation completed by Dr. Howell.  I find that his opinions are not consistent with his own medical records and office notes.  The doctor's own reports fail to reveal the type of significant clinical and/or laboratory abnormalities one would expect if the claimant were in fact disabled and the doctor did not specifically address this weakness.  Dr. Howell noted in his office notes that the claimant's history had a lot of conflicting reports in her records.  Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on her activities.  In fact, the treatment for the alleged disabling impairment has been especially routine and conservative in nature.  She has not been referred to a pain management specialist nor has seen required emergency room visits or hospitalization for any of her impairments.  There is no evidence to suggest that the claimant has ever sought or received treatment from any specialist for any of her impairments and all treatment has been rendered by a general practitioner.  It is acknowledged that she was seen in the emergency room in August 2008 after a fall. The claimant has been prescribed pain medication by Dr. Howell but it appears that she is closely monitored.  Dr. Howell noted in August 2008 that the claimant looked better than she has looked in a while and noted she was finally taking care of herself. He also noted she was not having as much trouble with her chronic interstitial cystitis or back pain.

(R. 21.)

The ALJ's determination is supported by substantial evidence.  The medical records indicate that Carlisle received treatment from Dr. Howell on a routine basis between October 2007 and May 2009.  (R. 374-399.)  During an initial evaluation on October 11, 2007, Dr. Howell noted that Carlisle gave a "[medical] history that is something else to behold."  (R.

375.)  Dr. Howell assessed: (1) assaulted with soft tissue injury, (2) chronic bladder problems, (3) COPD/asthma, (4) acid reflux/hiatal hernia, (5) seizure disorder, and (6) anxiety. (R. 375-76.) On November 20, 2007, Carlisle complained of nausea, diarrhea, and pain on urination. (R. 378.)  Dr. Howell assessed abdominal/pelvic pain and cystitis and prescribed Lortab, Phenergan, Xanax, Premarin, Pyridium, and Keflex.  (*Id.*)

On January 10, 2008, Carlisle complained of chest tightness and a toothache, and reported that she had suffered a seizure two days earlier. (R. 379.)  Dr. Howell assessed abscessed teeth and chronic pain and prescribed Xanax, Lortab, and Keflex.  (*Id.*)

On February 21, 2008, Carlisle returned to Dr. Howell's office complaining of insect bites and requesting additional medication.   (R. 381.)   Dr. Howell assessed: (1) cellulitis/infected insect bites, (2) anxiety, and (3) chronic pain. (*Id.*)  The doctor prescribed Bactrim, Bactroban, Xanax, and Lortab.  (R. 381.)  On March 25, 2008, Carlisle went to Dr. Howell with complaints of severe bladder spasms and abrasions on her arms.  (R. 383.)  Dr. Howell noted that the abrasions on Carlisle's arms were either from multiple spider bites or "self-induced pinching of the skin."  (R. 384.)  Dr. Howell assessed pelvic pain/cystitis and insect bites and prescribed Bactrim, Bactroban, Lortab, and Xanax.  (*Id.*)  On May 15, 2008, Carlisle returned to Dr. Howell's office with complaints of dizziness, pressure in her right ear drum, a swollen eye, and rectal bleeding.  (R. 386.) She also requested a refill of Lortab to treat her chronic back pain and cystitis and Vistaril and Xanax "for nerves."  (*Id.*)  Dr. Howell noted that Carlisle continued to suffer from skin lesions which were either from her "picking at the skin" or flea bites.  (R. 386.) He also assessed: (1) rectal bleeding, (2)

8

conjunctivitis, (3) anxiety, and (4) infected skin lesions and prescribed eye medication, antibiotics, Lortab, Vistaril, and Xanax.  (R. 386.)

On August 25, 2008, Carlisle returned to Dr. Howell complaining of nosebleeds and requesting a refill of Xanax and Lortab.  (R. 388.)  Dr. Howell noted that Carlisle "states that she is finally taking care of herself with multiple skin lesions beginning to heal [and] is not having as much problems with her chronic interstitial cystitis or back pain."  (*Id.*)  Dr. Howell assessed: (1) abscessed tooth, (2) anxiety, and (3) chronic pain.  (Id.)  He also renewed Carlisle's prescription for Lortab and Xanax.  (*Id.*)

On October 21, 2008, Carlisle went to Dr. Howell complaining of chronic pain and anxiety and requesting that he complete paperwork concerning her application for disability benefits, as well as a refill of Lortab and Xanax.  (R. 390.)  She also reported that she suffered a light seizure in July.  (*Id.*)  Dr. Howell noted that "[t]here are a lot of conflicting reports in [Carlisle's] records" and assessed: (1) chronic anxiety, (2) chronic pain in pelvis and back, (3) chronic urinary tract symptoms, and (4) seizure disorder.  (*Id.*)  He also renewed Carlisle's prescription for Lortab and Xanax.  (*Id.*)

In December 2008, Carlisle returned to Dr. Howell complaining of nausea, vomiting, and vertigo and requesting a refill of Xanax and Lortab.  (R. 392.)  Dr. Howell noted that Carlisle "looks fairly good today and looks sober" and assessed: (1) vertigo/chronic sinusitis, (2) anxiety, and (3) chronic back pain.  (*Id.*)  Dr. Howell also prescribed over-the-counter medication, Xanax, and Lortab.  (*Id.*)

In February 2009, Carlisle complained of blood in her urine and requesting a refill of

Xanax and Lortab. (R. 394.) Dr. Howell assessed: (1) hematuria/cystitis, (2) anxiety, and (3) chronic pain. (*Id.*) Upon receiving the results of testing indicating the presence of leukocytes, Dr. Howell prescribed an antibiotic, as well as Xanax and Lortab. (*Id.*)

On March 31, 2009 – Carlisle's birthday – Carlisle returned to Dr. Howell's office reporting that her house had burned down. (R. 396.) She complained of smoke inhalation, a cough, chest congestion, and frequency of urination and requested a refill of her medication. (*Id.*) The results of her urinalysis were normal. (*Id.*) Dr. Howell renewed Carlisle's prescriptions for Xanax and Lortab and prescribed antibiotics, hormone cream, and an inhaler. (*Id.*) He also assessed: (1) cough, (2) menopause, (3) anxiety, and (4) cystitis. (*Id.*)

On April 27, 2009, Carlisle complained of suffering a seizure approximately one week before her appointment and neck pain which arose shortly after jumping out a window when her house was on fire. (R. 398.) Dr. Howell noted that Carlisle "has gone through 80 Lortab since March 31st and want[s] more." (*Id.*) Dr. Howell's assessment was neck pain and pseudoseizures versus seizures. (*Id.*) He prescribed an antibiotic and Flexeril and renewed her prescription for Lortab. (*Id.*)

In May 2009, Carlisle went to Dr. Howell's office requesting a refill of Lortab and Xanax and complained of "a little chest congestion." (R. 400.) Dr. Howell noted "a few wheezes [with] clear coughing" and assessed: (1) neck pain, (2) anxiety, and (3) nausea. (*Id.*) Dr. Howell renewed Carlisle's prescription for Lortab and Xanax and prescribed Phenergan. (*Id.*)    Between June and October 2009, Carlisle received treatment from Dr.

Lee Carter, a physician in Dr. Howell's practice, for a variety of complaints including broken ribs, anxiety, and bronchitis. (R. 401-404.)

Upon conducting an examination of Carlisle for her complaints of a sore mouth, bad teeth, chest pain, a sinus infection, fibrocystic disease, chronic pain, and anxiety on December 16, 2009, Dr. Howell assessed sinusitis and fibrocystic disease of the right breast and prescribed an antibiotic and inhaler, as well as Lortab and Xanax. (R. 406.)

The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ examined and evaluated the medical records for evidence supporting Dr. Howell's assessment of the severity of Carlisle's pain and functional restrictions. It is clear that Dr. Howell's treatment notes reflect Carlisle's complaints as told to Dr. Howell by Carlisle. His treatment notes do not support the level of pain or functional restrictions he attributes to Carlisle. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly discounted Dr. Howell's opinion that Carlisle suffers from disabling pain and markedly to severe functional limitations.

Carlisle also argues that the ALJ improperly relied on the opinion of Dr. James Anderson, a non-examining medical expert. Specifically, Carlisle asserts that Dr. Anderson's opinion is entitled to little weight, and that the ALJ should not have credited his opinion because there is no evidence indicating that Dr. Anderson reviewed all of the relevant medical records before completing the interrogatories provided by the Commissioner.

First, the record indicates that Carlisle was provided Dr. Anderson's answers to the

11

interrogatories and was given an opportunity to submit additional interrogatories or request a supplemental hearing. (R. 231-32.)  In addition, there is nothing in the record indicating that the medical records provided to Dr. Anderson were incomplete.  In the interrogatories, Dr. Anderson specifically references Dr. Howell's treatment notes and lists medical impairments referenced in the medical record.  Under these circumstances, the court must assume that Dr. Anderson reviewed all of the relevant medical records prior to completing the interrogatories and has no reason to suspect otherwise.

Next, the court finds that Carlisle's argument that the ALJ erred in assigning weight to a nonexamining physician's opinion does not entitle him to relief.  Not only did the ALJ accord partial weight to Dr. Anderson's opinion, he accorded great weight to the opinion of an examining consultative physician, Dr. Hakima.

> With regard to the claimant's physical limitations, I have assigned great weight to the findings and opinions of the consultative examiner, Dr. Hakima, [whose] examination was essentially unremarkable.  He noted general findings [of] only abdominal tenderness and decreased breath sounds.  Pulmonary function studies noted the claimant had only a moderate obstruction with significant improvement noted post bronchodilator.  I have also considered and given partial weight to the findings of Dr. Anderson, impartial medical expert who completed an interrogatory following the hearing.  I agree with his assessment of the impairments and that the claimant is capable of a limited range of light work activity.  I do not agree with his assessment that the claimant[] has a substance addiction disorder that meets Listing 12.09. . . .

(R. 20.)

Social Security regulations provide guidelines for an ALJ to use when evaluating medical opinion evidence.  *See* 20 C.F.R. § 404.1527. The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship,

12

how supported an opinion is, whether an opinion is consistent with the record, and a doctor's specialization.  20 C.F.R. § 404.1527(d)(1)-(6).  An ALJ may ask for, and consider, opinions from medical experts on the nature and severity of a claimant's impairments.  20 C.F.R. 404.1527(f)(2)(iii).  Taken alone, the opinion of a non-examining reviewing physician does not constitute substantial evidence to support an administrative decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990).  However, an ALJ does not err in relying on the opinion of the non-examining physician when that opinion does not contradict an examining physician's opinion.  *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).  The evidence in the record supports the ALJ's inclusion of Dr. Anderson's assessment in his determination regarding Carlisle's functional capacity.

Dr. Anderson found that Dr. Howell's opinion concerning Carlisle's physical functional capacity "is not based on objective medical information [and] is not consistent with his office notes or the record as a whole."  (R. 419.)  Dr. Anderson also determined that Carlisle's medical impairments restrict her to light work with only occasional exposure to concentrated environmental toxins.  (R. 415.)  As previously discussed, Dr. Howell's opinion that Carlisle suffers from disabling pain and markedly to severe functional limitations is not supported by his own treatment notes.  Thus, this court cannot conclude that the ALJ's reliance on Dr. Anderson's opinion is misplaced.  Furthermore, this court's review of the record indicates that Dr. Anderson's opinion does not contradict Dr. Hakima's findings.

The ALJ evaluated all the evidence before him, and determined that, in addition to Dr. Anderson, the opinion of Dr. Hakima led him to conclude that the plaintiff is not disabled.

13

It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Instead the court reviews the record to determine if the decision reached is supported by substantial evidence.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*   After a careful review of the medical records as a whole, the court concludes that substantial evidence supports the ALJ's decision that Carlisle has the residual functional capacity to perform work in the national economy, and is not disabled.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

A separate order will be entered.

DONE this 4th day of September, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

14